UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| THERESA DAYTON, PERSONALLY, AND AS THE REPRESENTATIVE OF THE ESTATE OF THOMAS E. CICARDO, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF ALASKA, <br><br> Defendant and Third-Party Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, <br><br> Third-Party Defendant. | 3:12-cv-00245 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motion at Doc. 104] |

## I. MOTION PRESENTED

At docket 104 plaintiff Theresa Dayton ("Dayton") moves for reconsideration of the court's order at docket 81. Defendant and third-party plaintiff State of Alaska ("the State") responds at docket 108. Dayton replies at docket 114. Oral argument was not requested, and it would not be of additional assistance to the court.

## II.  BACKGROUND

Dayton sued the State for the wrongful death of Thomas Cicardo who was a member of the flight crew aboard a United States Air Force C-17 when it crashed during an Alaska Air National Guard (AANG) practice flight in preparation for a public air show. All of the flight crew perished in the crash.  Dayton filed suit in state court based on state law claims.

The State filed a third-party complaint against the United States and the estates of the flight crew, alleging negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA").  The United States removed the case to federal court, and the court dismissed the claim against the United States pursuant to *Feres v. United States.*[1]  With only a state law claim against the State remaining, the court remanded the case.[2]  On appeal, the Ninth Circuit reversed the remand order, holding that the Attorney General's certification under the Westfall Act precludes a remand to state court, and the lawsuit returned to this court's docket.[3]  The State moved to dismiss Dayton's claims, and the court granted the motion.[4]  It found that Dayton's claim is based on the allegation that the pilot engaged in intentional misconduct when he deviated from military standards and procedures during the practice flight at issue

---

[1] 340 U.S. 135 (1950) (holding that the FTCA does not waive sovereign immunity for allegedly tortious conduct that is incident to military service and thus bars suits brought by service members against the United States and any third-party actions against the United States arising from injuries to service members incident to their military service).

[2] Order at doc. 39. The State moved for reconsideration, but that request was denied in an Order at doc. 43.

[3] Doc. 50 at p. 4.

[4] Doc. 81.

and therefore the resolution of the case will necessarily involve uniquely military issues and military expertise. The court concluded that, because the case will involve uniquely military standards and military expertise, intra-military immunity would apply under state law based on dicta in *Himsel v. State*.[5] The court had issued the order on a preliminary basis at docket 79, three days before oral argument, but after hearing from the parties, the court concluded its analysis was correct and promptly issued the order in final form at docket 81, and judgment was entered against Dayton.[6]

Dayton then filed a motion to vacate the judgment. She argued that the court's dismissal relied on grounds not raised by the State in its motion and that she was not given sufficient opportunity to address the issue of state intra-miliary immunity as it was discussed by the court. She argued that her state tort claim could proceed on purely civilian standards, without involvement of uniquely military matters, and offered to provide supplemental evidence to show that despite the language in her complaint, the pilot's conduct was also in violation of general aviation standards. The court granted Dayton's motion. It then permitted Dayton to move for reconsideration of the order at docket 81 and allowed for an additional round of briefing.

### III. STANDARD OF REVIEW

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher

---

[5] 36 P.3d 35 (Alaska 2001).

[6] Doc. 82.

court in the same case.⁷  However, as long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.⁸  That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."⁹

## IV.  DISCUSSION

In the order at docket 81, the court relied on Dayton's complaint—which alleges that the pilot acted with intentional disregard of military procedures and regulations—in finding that Dayton did not dispute the involvement of military expertise in the case. Dayton objects to the court's assessment of her position.  She asserts that despite her complaint, she can alternatively prove her claim for intentional misconduct based on the pilot's failure to follow basic civilian flight protocols, and thus her claim against the State does not necessarily implicate military issues or expertise.  She argues that just like reliance on federal regulation in pleading a negligence claim does not create a federal question for purposes of jurisdiction, the reliance on military procedures in her complaint does not necessarily make her tort claim one involving military issues; that is, she

---

⁷*Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

⁸*City of Los Angeles v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

⁹*Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); LRCiv 7.2(g)(1) ("The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence.").

believes her complaint does not dictate the theory of her case and her claim can be examined in terms of non-military, civilian aviation regulations.

In support of her position, she relies on an affidavit from Retired Lt. Col. Kevin Edenborough.[10] Edenborough states that the pilot's conduct during the flight in question "was not sanctioned by any military policy" and that his failure to correct the stall warnings was a violation "of safety principles taught in both the FAA's and military's pilot training programs."[11]

After due consideration of the record itself and without regard to the complaint, the court concludes that its analysis at docket 81 remains correct; resolution of Dayton's claim involves military expertise. It is undisputed that the aircraft was exclusively military and that the flight occurred in the military airspace above the military base. It is undisputed that it was a training flight for the aerial demonstration crew and that the pilot's conduct was governed by military flight protocols and practices; there were specific Air Force "demonstration profiles" governing the flight. Therefore, the crew members aboard the flight, whether wearing federal or state "hats" if you will, were operating under military protocols for the air show and the aircraft.

Dayton stresses the pilot ignored stall warnings and basic safety procedures followed by all civilian pilots. She argues that by deviating from the military protocols, he was also deviating from basic flight principles, making this case indistinguishable from an ordinary civil-aviation case. While Plaintiff provides support in the record for the

---

[10]Doc. 90-1.

[11]Doc. 90-1 at pp. 7, 11.

fact that the pilot ignored stall warnings and deviated from civil aviation standards, the court concludes that such facts do not change the analysis. The pilot was actually operating under Air Force instructions and specified flight profiles and therefore the case necessarily implicates military matters. Resolution of the case will require examination of the military instructions and protocols that governed the flight and the pilot's deviation from those orders. It also implicates military pilot training, as well as the pilot's common practices during his aerial demonstrations of the C-17.[12] The fact that the crew member's participation was voluntary and the air show itself was a public event does not remove the military nature of the training flight in question. Dayton also stresses that the flight did not have a defense objective, but, again, the court concludes that the military regulations governing the flight necessarily implicate military training, protocols, and practices.

Dayton also objects to the court's conclusion that the state would apply intra-military immunity and to its analysis of Alaska Statute § 26.05.145. The court also maintains its position in that regard.

### V. CONCLUSION

Based on the preceding discussion, Dayton's motion for reconsideration at docket 104 is DENIED.

DATED this 3rd day of December 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[12]Doc. 109 at ¶¶ 5, 6.